ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| D. F. T.<br>(ANA TORRES RIVERA)<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE<br>EDUCACIÓN<br><br>Recurrido | KLRA202400642 | *Revisión Judicial*<br>procedente del<br>Departamento de<br>Educación<br><br>Caso Núm.:<br>QEE 2324 21 05 01495<br><br>Sobre: Educación<br>Especial |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de febrero de 2025.

El Querellante y Recurrente, el menor D.F.T., comparece ante nos mediante un recurso de revisión judicial. Solicita que dejemos sin efecto parcialmente la *Resolución Final y Orden*, dictada y notificada el 28 de octubre de 2024 por el Foro Administrativo de Educación Especial del Departamento de Educación de Puerto Rico (FAEE). Mediante la referida decisión, el FAEE declaró Ha Lugar la solicitud de reembolso por el pago de libros ($371.20) y alimentos ($500.00) para el año escolar 2023-2024, de conformidad con la evidencia de pagos atinentes.[1] No obstante, proveyó No Ha Lugar al reembolso por el servicio de tutorías solicitado por el compareciente.

**I.**

La causa del título se inició el 20 de mayo de 2024, ocasión en que D.F.T. presentó una *Querella* contra el Querellado y Recurrido, el Departamento de Educación de Puerto Rico (DEPR).[2] En lo atinente, indicó que el 5 de mayo de 2023 el Comité de

---

[1] Ello en consonancia con la Carta Circular 09-2014-2015 sobre *Política Pública para el Reembolso de Gastos Educativos y Relacionados cuando la Agencia no ha podido ofrecer una Educación Pública, Gratuita y Apropiada, según requerido por IDEA.*
[2] Apéndice, págs. 1-6.

Número Identificador

SEN2025_____

Programación y Ubicación (COMPU) se reunió para revisar su Programa Educativo Individualizado (PEI) correspondiente al año escolar 2023-2024, en el que cursaría el décimo grado.[3] Allí, se aprobó parcialmente la propuesta de compra de servicios de la institución privada Washburn School (Washburn).[4] Entre otros servicios educativos, la propuesta incluyó tutorías individualizadas a razón de $50.00 la hora, por 160 horas, para un total de $8,000.00.[5] Afirmó el Querellante que las tutorías individualizadas fueron denegadas, porque el DEPR no ofrecía ese servicio ni se contemplaba en el *Manual de Procedimientos de Educación Especial, infra.* Sostuvo que los maestros manifestaron que los servicios de tutorías individualizadas recibidos habían redundado en beneficios para su progreso académico.

La señora Ana Torres Rivera (señora Torres Rivera), madre del Querellante, no estuvo conteste con la decisión. Anunció que sufragaría los costes de las tutorías individualizadas en el transcurso del año escolar 2023-2024[6] y solicitaría el reembolso.[7] A tales efectos, instó la causa de autos para solicitar un desembolso por $17,300.00, así como los pagos prospectivos por el mismo concepto. Apuntaló que, en el año lectivo anterior 2022-2023, mediante la *Resolución Final* del caso *D.E.F.T. v. Departamento de Educación* (QEE-2223-21-09-00444), el Querellante obtuvo el reembolso de las tutorías de ese periodo.[8] En su parte pertinente, el dictamen aludido expresó:

.     .     .     .     .     .     .     .     .

> Las partes expresaron que no existía controversia sobre el pago del reembolso solicitado y que estaban en diálogo para llegar a un acuerdo al respecto.

.     .     .     .     .     .     .     .     .

---

[3] Apéndice, págs. 62-73; 74-86; 88-109; además, 146-158.
[4] Apéndice, págs. 110-115 y 159-164.
[5] Apéndice, pág. 115.
[6] Véase, Apéndice, págs. 171-183.
[7] Refiérase, Apéndice, págs. 83 y 155.
[8] Apéndice, págs. 57-61 y 166-170.

[...] el Departamento de Educación [...] aceptó reembolsar a la parte Querellante, en este caso particular y **a modo de excepción**, el costo de las tutorías para el año escolar 2022-2023.[9] (Énfasis nuestro).

.     .     .     .     .     .     .     .

El 30 de mayo de 2024, el DEPR presentó *Contestación a Querella*.[10] Adujo que el PEI de D.F.T. no autorizó las tutorías para el año escolar 2023-2024 ni se consintió un reembolso. Enfatizó que la señora Torres Rivera conocía la determinación desde el 5 de mayo de 2023.

Trabada la controversia, los contendientes concurrieron en que la cuestión a dilucidar era de estricto derecho.[11] A esos fines, presentaron una *Moción Conjunta*,[12] mediante la cual estipularon prueba documental[13] y los siguientes hechos:

1. El menor querellante cuenta con 15 años y está registrado en el Programa de Educación Especial del Departamento de Educación bajo la categoría de Autismo.

2. Durante el año académico 2022-2023, el querellante estuvo matriculado en la institución privada Washburn School del pueblo de Ponce por compra de servicio en la modalidad de reembolso autorizada por el Departamento de Educación en carta del 17 de junio de 2022.

3. Para el año escolar 2022-2023, el Comité de Programación y Ubicación (COMPU) se reunió el 2 de junio de 2022.

4. Para ese año escolar, el Departamento de Educación se negó a reembolsar los costos de tales tutorías por lo que la madre del estudiante presentó la querella QEE-2223-21-09-00444; recurso con el cual logró que se le reembolsaran las terapias provistas en ese año escolar

---

[9] Apéndice, págs. 58-59.

[10] Apéndice, págs. 7-11.

[11] Véase, Apéndice, págs. 21-22.

[12] Apéndice, págs. 27-29.

[13] La prueba documental estipulada es: (1) Minuta de reunión del Comité de Programación y Ubicación (COMPU) del 2 de junio de 2022, Apéndice, págs. 142-144; (2) Autorización compra de servicios para año 2022-2023 del 17 de junio de 2022, Apéndice, pág. 145; (3) Minuta de reunión del COMPU del 5 de mayo de 2023, Apéndice, págs. 74-86 y 146-158; (4) Propuesta de servicios institución privada año escolar 2023-2024, Apéndice, págs. 110-115 y 159-164; (5) Autorización compra de servicios para año 2023-2024 del 12 de junio de 2023, Apéndice, págs. 87 y 165; (6) Resolución final del caso QEE-2223-21-09-00444 del 30 de diciembre de 2022, Apéndice, págs. 57-61 y 166-170.

mediante resolución emitida el 30 de diciembre de 2022.

5. Para el año escolar 2023-2024, el querellante continuó ubicado en la institución antes indicada siendo autorizada mediante compra de servicios bajo la modalidad de reembolso en carta del 12 de junio de 2023.

6. El 5 de mayo de 2023, el COMPU se reunió para la revisión del Programa Educativo Individualizado (PEI) para el año escolar 2023-2024.

7. **Faltan por dilucidar las controversias relacionadas con los reembolsos por conceptos de tutorías y almuerzos**. (Énfasis nuestro).

Asimismo, como controversia de derecho, D.F.T. y el DEPR consignaron la siguiente interrogante: *¿Tiene el Departamento de Educación la obligación de reembolsar los costos de las tutorías sufragadas por los padres en el presente caso?*[14] En torno a ésta, las partes del título presentaron sendos *Memorando de Derecho*.[15] Luego de evaluar ambas posturas, el 28 de octubre de 2024, el FAEE dictó la determinación administrativa recurrida.[16] Acogió las siete determinaciones de hechos, tal cual fueron estipuladas, y la evidencia documental ofrecida.

En su decisión, el FAEE indicó que el PEI de D.F.T. para el año académico 2023-2024 no incluyó las tutorías individualizadas ya que el Querellante no las necesitaba porque había progresado académicamente. Apuntó el hecho de que el reembolso del año 2022-2023 se pagó a modo de excepción. Por lo tanto, denegó el remedio solicitado. Así, concluyó:

. . . . . . . .

Es nuestro parecer que los servicios educativos brindados al estudiante por vía de compra de servicio

---

[14] Cabe señalar que las partes plantearon otra controversia: *¿Tiene el Departamento de Educación la obligación de reembolsar los costos de los almuerzos sufragados por los padres en el presente caso?* Al respecto, si bien el DEPR rechazó el reembolso, en la *Resolución y Orden* impugnada se le concedió el beneficio a D.F.T., por lo que esa controversia fue adjudicada y no es objeto de impugnación. En cuanto al reembolso de los libros solicitados en la *Querella*, el DEPR aceptó pagar los costes, según surge del dictamen administrativo.

[15] Apéndice, págs. 40-115; 121-184.

[16] Apéndice, págs. 195-204.

en la escuela propuesta fueron claramente detallados, descritos y notificados, no surge de dichos documentos —cartas de compra de servicios o Minutas— que se incluyó el servicio de tutorías, por lo que NO PROCEDE ordenar a la Agencia que emita el pago por la suma de $17,300.00, la Agencia aceptó la propuesta de servicio de manera parcial no aceptó el pago de las tutorías antes mencionadas.

.    .    .    .    .    .    .    .

Inconforme, D.F.T. acudió oportunamente ante nos y señaló la comisión de los siguientes errores:

PRIMER SEÑALAMIENTO DE ERROR:
Erró el Foro Administrativo del Departamento de Educación al incluir hechos que no fueron estipulados por las Partes y acogerlos aun cuando del expediente no surge que sean hechos incontrovertibles.

SEGUNDO SEÑALAMIENTO DE ERROR:
Erró el Foro Administrativo del Departamento de Educación al obviar por completo el derecho aplicable, especialmente, en cuanto a la ausencia de la Notificación Previa Escrita que, conforme a la Ley, la agencia recurrida está obligada a proveer cuando quiere rechazar un servicio y la forma en que tal agencia debe actuar cuando es quien busca eliminar un servicio que durante años anteriores ha formado parte de la Educación Pública Gratuita y Apropiada (FAPE, por sus siglas en inglés) del estudiante y que, en ausencia de tales acciones por parte de la agencia, continúan siendo parte ese FAPE que el estudiante tenía derecho a recibir.

TERCER SEÑALAMIENTO DE ERROR:
Erró el Foro Administrativo del Departamento de Educación al obviar por completo el derecho aplicable, especialmente, en cuanto a la costumbre de la agencia recurrida a autorizar —de manera parcial— lo que considera "compras de servicios" cuando realmente son referidos de la agencia a instituciones privadas donde se decide ubicar un estudiante cuando no le pueden proveer FAPE dentro del sistema público.

CUARTO SEÑALAMIENTO DE ERROR:
Erró el Foro Administrativo del Departamento de Educación al tomar decisiones completamente incompatibles denegando por un lado el reembolso por concepto de tutorías mientras ordena por el otro el reembolso por concepto de almuerzos; esto a pesar de que tanto los almuerzos como las tutorías se encontraban incluidos en la propuesta de la institución privada donde se autorizó la ubicación para proveer FAPE al estudiante.

El 22 de enero de 2025, el DEPR presentó *Escrito en Cumplimiento de Resolución.* Con el beneficio de ambas posturas, podemos resolver.

**II.**

**A.**

Revisamos la *Resolución Final y Orden* en el caso del epígrafe, al palio de la Ley Núm. 38 de 30 de junio de 2017, *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9601 *et seq.* La Sección 4.5 de la LPAUG, 3 LPRA sec. 9675, que versa sobre el alcance de la revisión judicial, dispone que este tribunal intermedio sostendrá las determinaciones de hechos de las decisiones de las agencias, si se basan en evidencia sustancial que obra en el expediente administrativo; revisará en todos sus aspectos las conclusiones de derecho; y podrá conceder al recurrente el remedio apropiado si determina que a éste le asiste el derecho. Mediante la revisión judicial, esta curia debe evaluar que la decisión administrativa encuentre apoyo en la evidencia sustancial que obre en la totalidad del expediente administrativo. El concepto *evidencia sustancial* se ha definido como aquella "prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018), *Hilton Hotels v. Junta Salario Mínimo*, 74 DPR 670, 686 (1953), refrendados en *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 127-128 (2019). El *expediente administrativo*, por su parte, constituye la base exclusiva para la decisión de la agencia en un procedimiento adjudicativo, así como para la revisión judicial ulterior. Sec. 3.18 de la LPAUG, 3 LPRA sec. 9658; *Graciani Rodríguez v. Garaje Isla Verde, supra,* pág. 128. Por igual, examinamos que el ente gubernamental haya realizado una aplicación o interpretación correcta de las leyes o reglamentos que se le ha encomendado administrar. Finalmente, auscultamos que el organismo haya actuado dentro de los parámetros de su ley habilitadora, no de forma arbitraria, irrazonable ni haya lesionado

derechos constitucionales fundamentales. Véase, *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016).

Por consiguiente, al momento de justipreciar la valoración y razonabilidad de las decisiones administrativas adoptadas por las agencias del poder ejecutivo, los tribunales tenemos la obligación de ejercer un juicio independiente de las disposiciones legales para determinar si una agencia ha actuado o no dentro de los límites de su autoridad estatutaria, incluso en los casos de ambigüedad legislativa. Véase, *Loper Bright Enterprises v. Raimondo,* 144 S.Ct. 2244 (2024); 603 US __ (2024).[17] Claro está, según ha pautado el Tribunal Supremo federal, las interpretaciones y los dictámenes administrativos —realizados por virtud del cumplimiento de un deber oficial y basados en su experiencia especializada— pueden constituir un cuerpo de experiencia y un juicio informado ("body of experience and informed judgment") al que los foros revisores y los litigantes pudiéramos recurrir en cuestiones jurídicas. *Id.,* pág. 2259. Así surge el axioma de la doctrina de revisión judicial, en que los tribunales apelativos estamos llamados a otorgar amplia deferencia a las decisiones de las agencias administrativas. Ello, en atención a la experiencia y pericia que se presume tienen esos organismos para atender y resolver los asuntos que le han sido delegados. *Graciani Rodríguez v. Garaje Isla Verde, supra,* pág. 126.

Ahora, el peso persuasivo de la determinación administrativa va a depender de la minuciosidad en su consideración, de la validez de su razonamiento, así como de su congruencia con pronunciamientos anteriores y posteriores. Véase, *Skidmore v. Swift*

---

[17] En *Loper Bright Enterprises v. Raimondo, supra*, resuelto el 28 de junio de 2024, el Tribunal Supremo federal revocó la doctrina de deferencia establecida en el caso *Chevron USA, Inc. v. Natural Resources Defense Council*, 467 US 837 (1984). Con ello, además, se propende al fortalecimiento de la separación de poderes. Véase, *Loper Bright Enterprises v. Raimondo, supra*, pág. 2274 (Op. Conc. Juez Thomas).

*& Co.,* 323 US 134, 139-140 (1944), citado con aprobación en *Loper Bright Enterprises v. Raimondo, supra,* pág. 2259.

**B.**

En nuestro ordenamiento jurídico, la educación goza de garantías de entronque constitucional. La Constitución de Puerto Rico dispone que "[t]oda persona tiene derecho a una educación que propenda al pleno desarrollo de su personalidad y al fortalecimiento del respeto de los derechos del [ser humano] y de las libertades fundamentales". Art. II, Sec. 5, Const. ELA, LPRA, Tomo 1, ed. 2023, pág. 300. El Tribunal Supremo de Puerto Rico ha expresado que el fin de este precepto constitucional "es definir las aspiraciones colectivas sobre la educación y crear un sistema de enseñanza pública a niveles primario y secundario exclusivamente [...] sujeto a que el Estado tenga los recursos necesarios para su implantación". *Declet Ríos v. Dpto. de Educación,* 177 DPR 765, 773 (2009); *Asoc. Academias y Col. Cristianos v. E.L.A.,* 135 DPR 150, 168-169 (1994).

Por su parte, el Congreso de los Estados Unidos aprobó la *Ley Federal de Educación Especial,* conocida como *Individuals with Disabilities Education Act,* 20 USCA sec. 1401 *et seq.* (IDEA). Este esquema legal tiene el propósito de asegurar que todos los menores con necesidades especiales reciban educación pública, gratuita y apropiada (FAPE, por sus siglas en inglés), en atención a las necesidades particulares de cada estudiante, y proteger los derechos de éstos y de sus respectivos padres o tutores. El estatuto dispone que los estados y territorios que reciben fondos federales tienen que promover programas de educación especial pública, gratuita y apropiada, diseñados para atender las necesidades especiales y específicas de cada menor. 20 USCA sec. 1415(a).

Cónsono con la legislación federal en esta materia y en observancia del citado precepto constitucional, la Asamblea Legislativa promulgó la Ley Núm. 51 de 7 de junio de 1996, *Ley de*

*Servicios Educativos Integrales para Personas con Impedimentos,* según enmendada, 18 LPRA sec. 1351 *et seq.* (Ley 51). El estatuto también propende a garantizar la educación pública, gratuita y apropiada a los estudiantes con necesidades especiales que asistan a las escuelas públicas del País. Ello, en el ambiente menos restrictivo posible y de conformidad con su Programa de Educación Individualizado (PEI), ya que éste es el vehículo principal para la obtención de los fines legislativos. Art. 3 de la Ley 51, 18 LPRA sec. 1352. El PEI es una herramienta diseñada por un grupo de profesionales, conocedores de las necesidades académicas y funcionales que presenta el estudiante, el cual se denomina como Comité de Programación y Ubicación (COMPU). El COMPU se constituye por un representante calificado del Departamento de Educación de Puerto Rico (DEPR), que conozca tanto el currículo como la disponibilidad de recursos de la región educativa; un maestro de educación regular y/o especial; el estudiante de así ser apropiado y sus encargados legales. Véase, *Manual de Procedimientos de Educación Especial,* julio 2020, Departamento de Educación, Secretaría Asociada de Educación Especial, sec. 6.1(2), págs. 56-57.

IDEA y la Ley 51 legitiman a los padres o encargados insatisfechos con los servicios educativos ofrecidos para que presenten una querella sobre cualquier asunto relacionado con la identificación, evaluación o ubicación educativa del menor, o la provisión de una educación pública, gratuita y apropiada. 20 USCA sec. 1415(b)(6). En el caso de que la persona con impedimentos no esté recibiendo una educación apropiada, en el ambiente menos restrictivo y de acuerdo con los arreglos de servicios contenidos en el PEI, el estatuto provee para que sus tutores puedan solicitar una vista administrativa ante un juzgador imparcial. *Orraca López v. ELA,* 192 DPR 31, 42 (2014); 20 USCA sec. 1415(f); Art. 4(B)(2)(d) de

la Ley 51, 18 LPRA sec. 1353(B)(2)(d). El foro administrativo compelido debe determinar si al menor, en efecto, se le ha negado ese derecho; y dicha decisión es revisable ante los tribunales. *Orraca López v. ELA, supra*; 20 USCA sec. 1415(f)(g).

El Tribunal Supremo federal ha enunciado:

The adequacy of a given IEP [Individual Education Plan] turns on the unique circumstances of the child for whom it was created. This absence of a bright-line rule, however, should not be mistaken for "an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review."[18]

At the same time, deference is based on the application of expertise and the exercise of judgment by school authorities. The Act [IDEA] vests these officials with responsibility for decisions of critical importance to the life of a disabled child. The nature of the IEP process, from the initial consultation through state administrative proceedings, ensures that parents and school representatives will fully air their respective opinions on the degree of progress a child's IEP should pursue.[19] By the time any dispute reaches court, school authorities will have had a complete opportunity to bring their expertise and judgment to bear on areas of disagreement. A reviewing court may fairly expect those authorities to be able to offer a cogent and responsive explanation for their decisions that shows the IEP is reasonably calculated to enable the child to make progress appropriate in light of his circumstances. (Citas omitidas). *Endrew F. v. Douglas County School District RE-1*, 580 US 386, 404 (2017).

La legislación federal y estatal aseguran el derecho del estudiante con discapacidad a ser educado en igualdad de condiciones que un estudiante sin discapacidad. El procedimiento de ubicación de un estudiante con discapacidad se realiza a través del COMPU. Este vehículo garantiza "el derecho del estudiante a recibir una educación pública y apropiada al seleccionar la alternativa de ubicación menos restrictiva, teniendo altas expectativas y no limitando sus capacidades. El funcionamiento académico y cognitivo será el criterio principal para la selección de la alternativa de ubicación". Véase, *Manual de Procedimientos de*

---

[18] *Board of Educ. v. Rowley*, 458 US 176, 206 (1982).

[19] 20 USCA secs. 1414, 1415; *Board of Educ. v. Rowley, supra*, págs. 208-209.

*Educación Especial, op. cit.*, sec. 8.4, pág. 93. En lo pertinente al caso del título, el *Manual de Procedimientos de Educación Especial* establece lo siguiente:

.    .    .    .    .    .    .    .

6. Cuando el DEPR no tiene la alternativa de ubicación recomendada en el PEI, este puede determinar **identificar una escuela privada para comprar el servicio educativo a costo público**. La determinación de que la alternativa de ubicación no se tiene disponible en el DEPR le corresponde a la Secretaría Asociada de Educación Especial (SAEE) una vez funcionarios de la SAEE concluyen el proceso de consulta sobre la localización de alternativas de ubicación en todas las escuelas públicas adscritas al DEPR. El proceso de consulta está detallado en los siguientes puntos.

7. **La determinación de aprobar o rechazar una compra de servicios educativos le corresponde al Secretario Asociado de Educación Especial**. (Énfasis nuestro). *Manual de Procedimientos de Educación Especial, op. cit.*, sec. 8.3(6-7), pág. 91.

.    .    .    .    .    .    .    .

15. La **compra de servicios a nivel privado** es una determinación que:

a. **se revisará anualmente, durante el proceso de revisión de PEI**; o

b. cuando la situación que originó la compra de servicios haya variado, ya sea porque las necesidades del estudiante no son las mismas o porque la [Oficina Regional Educativa] ha logrado identificar la alternativa de ubicación apropiada o la localización a nivel público, esto será considerado por el COMPU para determinar la ubicación futura del estudiante. (Énfasis nuestro). *Manual de Procedimientos de Educación Especial, op. cit.*, sec. 8.4(15), pág. 98.

### III.

En la causa presente, en el primer señalamiento de error, el Recurrente aduce que el FAEE erró al incluir hechos que no fueron parte de las estipulaciones. Argumenta que el DEPR consignó en su *Memorando de Derecho* 15 hechos, en lugar de los siete estipulados por las partes.[20] Riposta que estas determinaciones fueron acogidas

---

[20] Véase, Apéndice, págs. 41-44; además, págs. 116-118; 119-120 y 185-186; 187-188; 189-190.

como incontrovertibles en el cuerpo de la decisión administrativa, lo que constituyó un abuso de discreción. Alega en el segundo señalamiento de error que la determinación del FAEE no está basada en la totalidad del expediente, al obviar el derecho aplicable, en cuanto a la ausencia de una notificación previa escrita cuando el DEPR rechaza un servicio, en alusión a la Ley IDEA y el Código de Reglamentación Federal.[21] Añade en el tercer señalamiento de error que el FAEE incidió al no considerar el derecho pertinente ante la costumbre del DEPR de autorizar parcialmente las "compras de servicios". El Recurrente arguye que se trata de referidos a instituciones privadas, cuando el DEPR no puede proveer una educación pública, gratuita y apropiada. Por último, plantea en el cuarto señalamiento de error que el FAEE adoptó decisiones incompatibles al aprobar los almuerzos y no las tutorías, según incluidos en la propuesta de Washburn, al sostener que no debieron considerarse por separado.

Por la relación intrínseca en los señalamientos de error planteados, los discutiremos en conjunto.

De entrada, es meritorio destacar que, en las determinaciones de hechos, el dictamen únicamente recoge los siete enunciados estipulados. Las contenciones del Recurrente forman parte del resumen de las alegaciones planteadas por los litigantes. Estas afirmaciones se desprenden de la prueba documental anejada, según hemos constatado en el examen del expediente ante nos. Por consiguiente, el FAEE no estaba impedido de hacer referencia a dichos hechos.

Una evaluación minuciosa de la *Resolución y Orden* recurrida y la totalidad del expediente administrativo revelan que el reembolso de las tutorías individualizadas en el curso escolar 2022-2023 fue

---

[21] Véase, 34 CFR 300.503; 20 USC secs. 1414(b)(1); 1415(b)(3)(4); 1415(c)(1).

resultado de un acuerdo y otorgado a manera de excepción. Así se desprende palmariamente de la *Resolución Final* en el caso QEE-2223-21-09-00444 citada antes en esta *Sentencia,* así como de la Minuta de 5 de mayo de 2023, cuando alude a dicho pronunciamiento administrativo:

. . . . . . . .

> u. Madre presentó resolución con fecha de aprobación del 30 de diciembre de 2022 en donde madre solicitó el reembolso de las tutorías que recibe el estudiante, según se acordó en el COMPU del 2 de junio de 2022. En la resolución indica que licenciada Cabán López informó que luego de la consulta realizada a la Dra. Jessien Díaz Vázquez, Secretaria Asociada Interina de Educación Especial, **aceptó reembolsar a la parte Querellante, en este caso particular y a modo de excepción**, el costo de las tutorías para el año escolar 2022-2023.[22] (Énfasis nuestro).

. . . . . . . .

De la referida Minuta surge también la controversia de autos, en torno a las tutorías individuales propuestas por Washburn para el año escolar 2023-2024; así como que la señora Torres Rivera asumiría el pago de dichos servicios y solicitaría el reembolso. "Entonces, madre notifica que pagará el servicio de tutorías de forma privada para solicitar el reembolso".[23] El DEPR explicó el rechazo de la subvención porque "no ofrece el servicio de tutorías, no se contemplan en el *Manual de Educación Especial* revisado en 2020".[24] Añadió el DEPR que D.F.T. "al momento está evidenciando una ejecución y un **progreso académico satisfactorio** demostrando el **dominio de las destrezas del grado**, se describe a [D.F.T.] como un estudiante aplicado, respetuoso y de compromiso antes [sic] los estudios. **Al momento el [DEPR] no contempla las consideraciones necesarias para brindar el servicio de tutorías**".[25] (Énfasis nuestro).

---

[22] Apéndice, págs. 83-84 inciso (u).

[23] Apéndice, pág. 83, inciso (s).

[24] Apéndice, pág. 83, inciso (r).

[25] Apéndice, pág. 83, inciso (t).

Es decir, en el COMPU correspondiente al periodo escolar 2023-2024, se notificó que las tutorías individualizadas no fueron aprobadas, por lo que tampoco se acordó el reembolso de los pagos que la madre anunció que realizaría a instancia propia. El progreso académico y el dominio de las destrezas del grado de D.F.T. fueron los criterios esenciales en la determinación, ya que no estaban presentes las consideraciones necesarias para brindar el servicio de tutorías durante el año escolar 2023-2024. Además, el hecho que la subvención se brindó en el año escolar 2022-2023 es inmaterial, no sólo porque fue otorgada de manera excepcional en esa ocasión, sino porque el ordenamiento establece que la compra de servicios a nivel privado es una determinación que se revisa anualmente, durante el proceso de revisión de PEI.[26]

En este caso, el DEPR no tenía disponible la alternativa de ubicación recomendada en el PEI del Recurrente. Por ende, se identificó a Washburn como proveedor del servicio educativo. Ahora, la decisión de aprobar o rechazar la compra de servicios educativos recae sobre el Secretario Asociado de Educación Especial.[27] Según la determinación del DEPR, si bien se aprobaron los reembolsos de matrícula, mensualidades y libros, los servicios de tutorías individualizadas y almuerzos fueron excluidos, de conformidad con la comunicación de 12 de junio de 2023.[28]

Con relación a la ausencia de notificación previa y escrita, huelga mencionar que ésta no fue parte de las alegaciones de la *Querella*. De todas formas, la ausencia de una notificación formal no fue impedimento para la presentación del reclamo y la solicitud del remedio.

---

[26] Véase, *Manual de Procedimientos de Educación Especial*, julio 2020, Departamento de Educación, Secretaría Asociada de Educación Especial, sec. 8.4(15), pág. 98.
[27] *Id.*, sec. 8.3 (7) pág. 91.
[28] Apéndice, págs. 87 y 165.

De conformidad con el ordenamiento jurídico, la notificación escrita previa por parte del DEPR expresa la acción que pretende iniciar, finalizar, aceptar, **rechazar** o proponer para el estudiante.[29] En esas instancias, la notificación escrita previa debe incluir, entre otras cosas: (1) una descripción de la acción que el DEPR propone o rechaza; (2) una explicación de las razones para proponer o rechazar tal acción; (3) una descripción de otras opciones, así como otros factores que fueron considerados y las razones para descartarlos; y (4) una descripción de cada procedimiento de evaluación, prueba, avalúo, expediente o informe utilizado como base para la acción propuesta o rechazada.[30]

Somos de la opinión que el rechazo de las tutorías individualizadas no ameritaba una notificación escrita previa. Adviértase que el *Manual de Procedimientos de Educación Especial, supra,* comprende el formulario SAEE-03b,[31] de notificación previa para evaluación y terapias, no para tutorías, ya que éstas no forman parte del documento que opera los servicios de educación especial. De todas maneras, la Minuta de 5 de mayo de 2023 suple y subsana la notificación, ya que ahí se describió la propuesta rechazada, en alusión al servicio de tutorías individualizadas; y se consignaron las razones del DEPR para dicho rechazo, al acotar que ese servicio no estaba contemplado en el *Manual de Procedimientos de Educación Especial, supra,* y que el Recurrente había demostrado aprovechamiento académico. En consonancia, el FAEE consideró "que los servicios educativos brindados al estudiante por vía de compra de servicio en la escuela propuesta fueron claramente detallados, descritos y notificados [...]".[32]

---

[29] Véase, *Manual de Procedimientos de Educación Especial, op. cit.*, sec. 29, pág. 354; 34 CFR sec. 300.503 (a).

[30] *Id.*; 34 CFR sec. 300.503 (b).

[31] Véase, *Manual de Procedimientos de Educación Especial, op. cit.*, sec. 31, *Garantías Procesales.*

[32] Apéndice, pág. 201.

Por otra parte, aun cuando el Recurrente muestra inconformidad con el uso del término *compra de servicios a nivel privado*, lo cierto es que así se denomina en el *Manual de Procedimientos de Educación Especial, supra.* Si bien D.F.T. tiene razón en que esta alternativa se contempla cuando el DEPR no puede ofrecer una educación pública, gratuita y apropiada, es evidente que no surge del ordenamiento jurídico que el DEPR esté obligado a aceptar a ciegas todos los ofrecimientos propuestos por la institución privada. Al fin y al cabo, el PEI es el "documento donde se establecen las necesidades académicas y funcionales del estudiante y cómo serán minimizadas a través de los servicios que el programa de educación especial ofrece con el propósito de garantizar que el estudiante reciba una educación pública, gratuita y apropiada...".[33] Ciertamente, aun si el DEPR hubiera aceptado reembolsar excepcionalmente el servicio de tutorías individualizadas, existe una diferencia sustancial entre el coste de $8,000.00 propuesto por Washburn y los $17,300.00 solicitados por el Recurrente.[34]

Finalmente, D.F.T. se equivoca al argüir que el FAEE emitió determinaciones incompatibles al conceder el reembolso de almuerzos y no el de las tutorías. La orden del FAEE para sufragar los almuerzos no descansó meramente en que dicho servicio se encontraba en la propuesta de Washburn, sino en su sana discreción, a pesar de que D.F.T. no requirió una dieta especial ni el PEI los incluyó.

> [...] en cuanto a la comida indica "Lunchroom Fee" / tarifa de comedor, para el año escolar 2023-2024 por $500 está incluida en la propuesta aceptada, aunque no surge de la carta de compra de servicio del 12 de

---

[33] Véase, *Manual de Procedimientos de Educación Especial*, *op. cit.*, sec. 7.1(1), pág. 65.

[34] Conforme el artículo 4, sección 4.3, del *Reglamento para establecer el calendario escolar del Departamento de Educación de Puerto Rico*, un año académico comprende 180 días lectivos o 1,080 horas.

junio de 2023, no obstante, este Foro ORDENA al DEPR que previa presentación de recibos por la parte [Recurrente], realice el desembolso por el pago de comida por la suma de $500.00 [pago anual].[35]

Nótese también que el Recurrente no apuntó a ninguna disposición del *Manual de Procedimientos de Educación Especial*, *supra*, que acredite las tutorías individualizadas, ya que el documento no contempla ese tipo de servicio. De hecho, en éste se advierte, por ejemplo, que la intervención de un maestro recurso dentro del salón de clases regular (push-in) precisamente no se trata de tutorías, toda vez que su enfoque "no es reseñar el material que el maestro regular está ofreciendo".[36]

El Tribunal Supremo federal ha sido claro que la revisión judicial no debe confundirse con una invitación a los tribunales a sustituir la política educativa de las autoridades escolares. Véase, *Board of Educ. v. Rowley*, *supra*. En este caso, además, concluimos que, a través de su conocimiento y experiencia, el FAEE refrendó la explicación convincente y receptiva de la decisión de DEPR al rechazar el reembolso por el servicio de tutorías individualizadas a costa del erario.

**IV.**

Por los fundamentos expuestos, se confirma la *Resolución y Orden* impugnada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[35] Apéndice, pág. 202; además, pág. 184.

[36] Véase, *Manual de Procedimientos de Educación Especial*, *op. cit.*, sec. 12.3(A)(3)(d)(i), pág. 147.